451 A.2d 764

**COMMONWEALTH of Pennsylvania**

v.

**Jerry BRAXTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 25, 1982.

Filed Oct. 15, 1982.

John W. Packel, Chief, Appeals, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WIEAND, CIRILLO and POPOVICH, JJ.

WIEAND, Judge:

Jerry Braxton was tried without jury and convicted of robbery. On direct appeal, he contends that the Commonwealth failed to prove that he had been preliminarily arraigned within six hours of arrest and that, therefore, his post arrest confession should have been suppressed. There is no merit in this contention; and, therefore, the judgment of sentence will be affirmed.

The facts have been recited in the opinion of the Honorable Levy Anderson. "Shortly after midnight on April 22, 1979, a 'grandpop' squad of four police officers was on duty in the vicinity of 12th and Market Streets in Philadelphia, Pennsylvania. Officers Charles Miller, Paul Raley and Michael Turci were in street clothes. Officer Paul Domenic was dressed as an elderly man. He was wearing old clothes and a gray wig.

"Domenic proceeded to walk east on the north side of Market Street. The defendant was observed walking about fifteen to twenty feet behind him. Domenic entered the foyer of the Reading Terminal. The defendant followed, started up a flight of stairs and turned and looked at Domenic. Domenic started to walk down a flight of stairs leading to a subway concourse; the defendant followed.

"When he reached the concourse, Domenic walked fifteen yards east and stood near a wall. The defendant, who was carrying a vinyl bag, approached him and asked if he wanted to buy a coat. The defendant pulled a vest from his bag. Domenic said, 'That is not a coat.'

"The defendant then pulled a pint-size liquor bottle from his bag, pushed Domenic against the wall, waived the bottle in Domenic's face and said, 'give me your money or I will bust your mother fucking head.'

"The defendant searched Domenic, while continuing to threaten him. The defendant took two one dollar bills wrapped around a bundle of theatrical money from Domenic's pocked [sic]. The defendant then put the bottle back in the bag, shoved Domenic and started to run in the opposite direction.

"Domenic yelled, 'give me back my money,' which was a signal to the back-up officers to make an arrest.

"The defendant was met by Officer Mellor at the bottom of the steps leading from the Reading Terminal. Mellor, who had his service revolver drawn, ordered the defendant to 'freeze' and announced his identity. The defendant stopped, said, 'Oh, shit,' put down his bag and dropped the bundle of money. The defendant was frisked, handcuffed and transported to Central Detective Division, arriving at approximately 12:30 A.M. He was placed in a cell.

"At approximately 12:45 A.M. he was taken to a small room where he was interviewed by Detective John Monaghan. After getting identifying information from the defendant, Detective Monaghan informed him that he was being arrested for the robbery of the police decoy officer.

"Detective Monaghan warned the defendant of his constitutional rights, and asked the defendant a series of seven questions to determine if he understood those rights. The defendant indicated that he understood his rights, did not wish to remain silent, and was willing to answer questions without the presence of a lawyer.

"The defendant gave a brief statement in which he admitted robbing an old man in the subway near the Reading Terminal and taking a roll of one dollar bills.

"The statement was completed at 1:02 A.M. The defendant was given the statement to read, after which he signed it and wrote the date and time.

"Officers Domenic and Mellor testified that during their contact with the defendant, they smelled no alcohol on his breath and he did not appear to be intoxicated.

"Detective Monaghan also testified that the defendant did not appear to be under the influence of alcohol or drugs. All the police officers testified that the defendant was not struck or abused in any way.

"At 2:00 A.M. the defendant was transported to 8th and Race Streets for a preliminary arraignment.

"The defendant was arraigned at 3:09 A.M. on April 22, 1979."

Appellant's pre-trial motion to suppress his inculpatory statement was heard by the Honorable Angelo Guarino. At that hearing, Detective Monaghan testified that he had received a written confirmation that appellant was arraigned at 3:07 a.m. on April 22, 1979, approximately three hours after his arrest. The confirmation was in the form of a teletype from the Police Detention Unit, which contained the time of appellant's preliminary arraignment. Appellant made no objection at the suppression hearing to the admission into evidence of the teletype sheet. Appellant argues on appeal, as he did in support of his post-verdict motions, that this confirmation was hearsay evidence and insufficient to sustain the pre-trial hearing court's finding of a timely preliminary arraignment.

■ At the pre-trial hearing, however, there was no objection to this testimony or to the introduction of the teletype sheet. The law is clear that an extra-judicial statement, in the absence of objection, may be considered as substantive evidence of the facts contained therein. *Commonwealth v. Ehly,* 457 Pa. 225, 228–229, 319 A.2d 167, 169 (1974); *Rockwell v. Stone,* 404 Pa. 561, 573, 173 A.2d 48, 54 (1961); *Commonwealth v. Boden,* 399 Pa. 298, 308, 159 A.2d 894, 899 (1960), *cert. denied,* 364 U.S. 846, 81 S.Ct. 89, 5 L.Ed.2d 70 (1960); *Commonwealth v. Alston,* 269 Pa.Super. 573, 577, 410 A.2d 849, 852 (1979); *Commonwealth v. Moore,* 228 Pa.Super. 49, 52, 323 A.2d 25, 26 (1974); *Johnson v. Unemployment Compensation Board of Review,* 30 Pa.Cmwlth. 14, 17, 372 A.2d 957, 959 (1977). See also: Anno., Consideration, in Determining Facts, of Inadmissible Hearsay Evidence Introduced Without Objection, 79 A.L.R.2d 890 (1961).

■ The pre-trial hearing court found, therefore, that appellant had been timely arraigned and refused to suppress his statement. That determination was "final, conclusive and binding at trial" in the absence of evidence not theretofore available. Pa.R.Crim.P. 323(j). Accord: *Commonwealth v. McIntyre,* 451 Pa. 42, 49, 301 A.2d 832, 836 (1973); *Commonwealth v. Vassiljev,* 218 Pa.Super. 215, 218, 275 A.2d 852, 853 (1971).

■ Nevertheless, the Commonwealth's evidence at trial also demonstrated that appellant's preliminary arraignment had been held within six hours of his arrest. The official court records, introduced as evidence at trial, recite that appellant was arraigned before Judge McCabe at 3:09 on April 22, 1979. Appellant correctly observes that the recorded time contains no designation that the time was A.M. or P.M. However, an assistant court administrator testified from court assignment sheets that on April 22, 1979, Judge McCabe sat from midnight until 8:00 o'clock, A.M.

The court assignment sheets were qualified as business records and were admissible to show the hours during which Judge McCabe sat on April 22, 1979. See: 42 Pa.C.S. § 6108(b); *In Re Estate of Indyk,* 488 Pa. 567, 572–573, 413

A.2d 371, 373 (1979); *Commonwealth v. Graver,* 461 Pa. 131, 138–139, 334 A.2d 667, 670–671 (1975); *Commonwealth v. Visconto,* 301 Pa.Super. 543, 549–550, 448 A.2d 41, 44–45 (1982); *Commonwealth v. Kelly,* 245 Pa.Super. 351, 362–363, 369 A.2d 438, 444 (1976), *aff'd,* 484 Pa. 527, 399 A.2d 1061 (1979), *cert. denied and appeal dismissed,* 444 U.S. 947, 100 S.Ct. 417, 62 L.Ed.2d 317 (1979). They had been made and kept by the court administrator's office in the regular course of business. Contrary to appellant's argument, the production of the person or persons preparing the same was not essential to their admissibility. See: *In Re Estate of Indyk, supra* 488 Pa. at 573, 413 A.2d at 373–374; *Commonwealth v. Graver, supra* 461 Pa. at 138–140, 334 A.2d at 671–672; *Commonwealth v. Walker,* 275 Pa.Super. 311, 316–317, 418 A.2d 737, 740 (1980), transferred to 491 Pa. 351, 421 A.2d 172 (1980); *Campbell v. Royal Indemnity Co. of New York,* 256 Pa.Super. 312, 320, 389 A.2d 1139, 1143–1144 (1978); *Commonwealth v. Kelly, supra* 245 Pa.Super. at 362–363, 369 A.2d at 444.

Moreover, as we have observed, the timeliness of appellant's preliminary arraignment for purposes of determining the suppressibility of his post-arrest statement had been determined in pre-trial hearings, and it was not necessary that the same facts be proved again at trial.

The judgment of sentence is affirmed.